STATE OF CONNECTICUT *v.* JIMMIE R. BLETSCH
(AC 24260)

Flynn, DiPentima and Hennessy, Js.

Argued September 20—officially released November 23, 2004

*James B. Streeto*, assistant public defender, for the appellant (defendant).

*Eileen F. McCarthy*, assistant state's attorney, with whom, on the brief, were *Kevin T. Kane*, state's attorney, and *David J. Smith*, assistant state's attorney, for the appellee (state).

*Opinion*

DiPENTIMA, J. The defendant, Jimmie R. Bletsch, appeals from the judgments of conviction of three counts of sexual assault in the second degree in violation of General Statutes § 53a-71 (a) (1)[1] and two counts of risk of injury to a child in violation of General Statutes

---

[1] General Statutes § 53a-71 (a) provides in relevant part: "A person is guilty of sexual assault in the second degree when such person engages in sexual intercourse with another person and . . . (1) Such other person is thirteen years of age or older but under sixteen years of age and the actor is more than two years older than such person . . . ."

(Rev. to 1999) § 53-21.[2] The defendant claims that (1) the trial court abused its discretion in denying his motion for an exemption from the Connecticut sex offender registry and (2) his conviction for both sexual assault in the second degree and risk of injury to a child constitutes double jeopardy. We affirm the judgments of the trial court.[3]

In the fall of 1999, the defendant, whose date of birth is October 14, 1981, engaged in sexual encounters with two females who were younger than sixteen years of age. At that time, he was more than two years older than those minors. See General Statutes § 53a-71 (a) (1). The defendant was subsequently charged in two separate cases, hereinafter referred to as the "Danielson" and "Norwich" cases.

The Danielson case involved a sexual encounter between the defendant and the first victim[4] that occurred on October 4, 1999. The victim was fifteen years old at the time. After speaking to her on the

[2] General Statutes (Rev. to 1999) § 53-21 provides in relevant part: "Any person who (1) wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that the life or limb of such child is endangered, the health of such child is likely to be injured or the morals of such child are likely to be impaired, or does any act likely to impair the health or morals of any such child, or (2) has contact with the intimate parts, as defined in section 53a-65, of a child under the age of sixteen years or subjects a child under sixteen years of age to contact with the intimate parts of such person, in a sexual and indecent manner likely to impair the health or morals of such child . . . shall be guilty of a class C felony."

[3] The defendant was also convicted of breach of the peace in violation of General Statutes § 53a-181. Although the defendant listed on his appeal form the docket number for that judgment of conviction, he raised no claim to this court challenging his conviction for breach of the peace, and we therefore dismiss the appeal to the extent that it purports to challenge that conviction.

[4] In accordance with our policy of protecting the privacy interests of the victims of sexual abuse, we decline to identify the victims or others through whom the victims' identities may be ascertained. See General Statutes § 54-86e.

telephone, the defendant arrived at the victim's home at approximately 1:48 a.m. with a friend, Sean Gauthier. The defendant had been drinking alcohol that evening, and Gauthier stated that the defendant went there for the express purpose of having sexual relations with the victim. After entering her bedroom, the defendant pushed the victim onto the bed and rubbed his penis on her face and tried to make her suck it. The victim refused, and the defendant left.

The Norwich case involved two sexual encounters between the defendant and a second victim on November 19 and 27, 1999. The Norwich victim was fourteen years old at the time. During both encounters, the defendant requested that the victim engage in oral sex with him, to which she acquiesced. During the November 27 encounter, the defendant digitally penetrated her vagina with his fingers. The defendant also unsuccessfully attempted to have vaginal intercourse with the victim.

The defendant was charged by substitute information in the Norwich case with two counts of sexual assault in the second degree and two counts of risk of injury to a child. After a trial by jury, the defendant was convicted on all counts. Thereafter, in the Danielson case, he pleaded guilty, under the *Alford* doctrine,[5] to sexual assault in the second degree in violation of General Statutes § 53a-72a.[6]

---

[5] See *North Carolina* v. *Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970). The *Alford* doctrine allows a defendant to plead guilty without admitting guilt. In pleading guilty, however, the defendant "acknowledges that the state's evidence against him is so strong that he is prepared to accept the entry of a guilty plea." *Henry* v. *Commissioner of Correction*, 60 Conn. App. 313, 315 n.1, 759 A.2d 118 (2000).

[6] On August 15, 2001, the court permitted the defendant, in the Danielson case, to withdraw his prior plea made under *Alford* to sexual assault in the third degree, after which the defendant pleaded guilty to sexual assault in the second degree in violation of General Statutes § 53a-71 (a) (1). The court ordered that the length, terms and conditions of the defendant's sentence, as imposed on August 8, 2001, would remain the same.

At a sentencing hearing, the court heard testimony from the defendant's family and friends, and received several letters on his behalf. The court also heard that on September 1, 2000, the defendant had been arrested after he approached an undercover police officer who was posing as a prostitute and solicited a sexual act from her in exchange for $20.[7] In sentencing the defendant, the court emphasized that the present matter involved three separate incidents of sexual assault and consequently sentenced the defendant to a total effective term of five years imprisonment, execution suspended after eighteen months, with ten years probation pursuant to twelve specific conditions.[8] The defendant then made a motion for an exemption from the Connecticut sex offender registry, which the court denied. From those judgments the defendant appeals.

---

[7] That same day, the court permitted the defendant to plead guilty to breach of the peace in violation of General Statutes (Rev. to 1999) § 53a-181, for the September 1, 2000 incident involving solicitation of a prostitute. The defendant has not raised any claims challenging that conviction. See footnote 3.

[8] The conditions of probation required the defendant to: (1) participate in, and complete, sex offender evaluation, and engage in any subsequent treatment recommended by the office of adult probation and provided by a therapist approved by the probation office; (2) participate in periodic polygraph examinations that are to be conducted by a specially trained examiner and evaluated for the purpose of risk management; (3) have no contact with either of the victims, including but not limited to, written, face to face, telephone, Internet or any other means of communication, whether made personally or through a third person; (4) immediately report any incidental contact with either victim to his probation officer; (5) engage in any substance abuse evaluation and treatment that is deemed necessary; (6) submit to random urine analysis or alcohol sensor testing as recommended by his probation officer; (7) engage in full-time employment or full-time education upon his release; (8) contact law enforcement authorities and register as a sex offender immediately upon release; (9) immediately report any and all sexual relationships in which he engages, whether new or established, to his probation officer; (10) refrain from possession of, or subscription to, any sexually stimulating material that is deemed inappropriate by his probation officer; (11) refrain from patronizing any place in which such sexually stimulating literature or entertainment is available; and (12) completely abstain from alcoholic beverages.

I

The defendant claims that the court abused its discretion in denying his motion for an exemption from the Connecticut sex offender registry.[9] We disagree.

This case presents a question of first impression. The registration exemption contained in General Statutes § 54-251 (b) has not yet been addressed by a Connecticut appellate court. Our analysis, therefore, is twofold. First, we consider the proper statutory construction of that provision. Next, we apply that construction to the facts of this case.

A

We begin by addressing the standard of review with respect to the defendant's claim. The appropriate standard of review of a court's determination pursuant to § 54-251 (b) raises a question of statutory interpretation over which our review is plenary. See *Fort Trumbull Conservancy, LLC* v. *Planning & Zoning Commission*, 266 Conn. 338, 345, 832 A.2d 611 (2003).

Section 54-251[10] provides in relevant part: "(a) Any person who has been convicted . . . of a criminal offense against a victim who is a minor . . . and is released into the community on or after October 1,

___

[9] The Connecticut sex offender registry is part of the statutory scheme commonly referred to as "Megan's Law." As enacted in Connecticut, Megan's Law requires, inter alia, that convicted sex offenders register with the commissioner of public safety as a sex offender if they are released into the community. See General Statutes § 54-250 et seq. The department of public safety and all local police departments maintain a registry of all such sex offenders and are directed by the statute to inform individuals of dangers posed by a local sex offender. General Statutes §§ 54-257 and 54-258. In *Dept. of Public Safety* v. *Doe*, 538 U.S. 1, 4, 123 S. Ct. 1160, 155 L. Ed. 2d 98 (2003), the United States Supreme Court held that Connecticut's sex offender registry requirement does not violate procedural due process.

[10] At the time of the sexual assaults, General Statutes (Rev. to 1999) § 54-251, as amended by Public Acts 1999, No. 99-183, § 2, was in effect. The statute subsequently was codified as § 54-251 (b) in 2001.

1998, shall, within three days following such release . . . register . . . with the Commissioner of Public Safety . . . and shall maintain such registration for ten years . . . . (b) Notwithstanding the provisions of subsection (a) of this section, the court may exempt any person who has been convicted . . . of a violation of subdivision (1) of subsection (a) of section 53a-71 from the registration requirements of this section if the court finds that such person was under nineteen years of age at the time of the offense and that registration is not required for public safety."

As our Supreme Court recently explained: "[D]efinitive words, such as must or shall, ordinarily express legislative mandates of a nondirectory nature. . . . By contrast, [t]he word may, unless the context in which it is employed requires otherwise, ordinarily does not connote a command. Rather, the word generally imports permissive conduct and the conferral of discretion. . . . Therefore, when the legislature opts to use the words shall and may in the same statute, they must then be assumed to have been used with discrimination and a full awareness of the difference in their ordinary meanings." (Citations omitted; internal quotation marks omitted.) *Lostritto* v. *Community Action Agency of New Haven, Inc.,* 269 Conn. 10, 20, 848 A.2d 418 (2004). Section 54-251 (b) expressly indicates that the court *may* exempt certain persons. We therefore conclude that a trial court's determination of whether to exempt an individual from the registration requirements under § 54-251 (b) is properly reviewed under an abuse of discretion standard.

B

We turn to the question of whether the court abused its discretion in this instance. "In determining whether there has been an abuse of discretion, every reasonable presumption should be given in favor of the correctness

of the court's ruling. . . . Reversal is required only where an abuse of discretion is manifest or where injustice appears to have been done." (Internal quotation marks omitted.) *State* v. *Faraday*, 268 Conn. 174, 186, 842 A.2d 567 (2004). A defendant who seeks to reverse the exercise of judicial discretion assumes a heavy burden. *State* v. *Smith*, 207 Conn. 152, 167, 540 A.2d 679 (1988).

The defendant claims that because he was younger than nineteen years of age at the time of the offenses and because he poses no risk to public safety, the court was required to exempt him from the sex offender registry. Those two factors, however, are not dispositive. Rather, they are threshold determinations that must be made before the court ever considers whether to exempt a particular defendant. Even if we presume that those two factors are satisfied in a given case, the court still retains discretion to determine whether an exemption is warranted.

We are not persuaded, however, that both factors are necessarily satisfied in the present case. Having reviewed the record before us, we find support for the conclusion that the defendant did indeed pose a risk to public safety. In his brief, the defendant repeatedly characterizes the Norwich and Danielson sexual assaults as "consensual sexual activity." In the application for the defendant's arrest warrant in the Danielson case, however, the victim stated that the defendant "forced himself on me" and that she "repeatedly told him to stop and tried pushing him away." Moreover, the defendant insists that those who commit statutory rape when they are younger than nineteen years of age are "not truly 'sex offenders.' " He posits that his conduct in the Norwich and Danielson cases merely was "sexual experimentation of a sort normal to twenty-first century American teenagers."

However the defendant wants to characterize it, our legislature considers such conduct to be criminal. See General Statutes § 53a-71 (a) (1). In addition, a review of the record indicates that the defendant's conduct can hardly be deemed innocent experimentation. In both the Norwich and Danielson cases, the defendant and the minor victim hardly knew each other. In both cases, the defendant, without any prior physical contact with either victim, exposed his penis. Furthermore, in the Norwich case, after an unsuccessful attempt at vaginal intercourse with the victim, the defendant asked a male friend who was in the room whether he wanted to "break" the victim, prompting the victim to leave the room. The court was well within the proper exercise of its discretion to consider that conduct and to deny the request for an exemption.

In denying the defendant's motion for a registration exemption, the court found it significant that the sexual assault underlying the Danielson case occurred during the same period of time as the two Norwich assaults. Having presided over the trial in the Norwich case, the court was familiar with the defendant and the underlying facts of that case. It also heard the underlying facts of the Danielson case and was aware of the defendant's arrest in connection with solicitation of a prostitute. We conclude that the court did not abuse its discretion in denying the defendant's motion for an exemption from the Connecticut sex offender registry.

II

The defendant also claims that his conviction for both sexual assault in the second degree and risk of injury to a child constitutes double jeopardy. The defendant did not preserve his claim before the trial court. He now requests review under *State* v. *Golding*, 213 Conn.

233, 239–40, 567 A.2d 823 (1989).[11] Because the defendant cannot establish that the alleged constitutional violation clearly exists, his claim fails *Golding*'s third prong.

The defendant contends that the court violated his constitutional right to be free of double jeopardy because he was convicted of both sexual assault in the second degree in violation of § 53a-71 and risk of injury to or impairing the morals of a child younger than sixteen years of age in violation of § 53-21. We considered and rejected that precise claim last year. See *State* v. *Ellison*, 79 Conn. App. 591, 600–601, 830 A.2d 812, cert. denied, 267 Conn. 901, 838 A.2d 211 (2003). In *Ellison*, we concluded that "the elements necessary for a conviction of risk of injury to or impairing the morals of a child are different from the elements necessary for a conviction of sexual assault in the second degree . . . ." Id., 602. We held that a conviction under both § 53a-71 and § 53-21 does not constitute multiple punishments for the same offense. Id., 603; see also *State* v. *Rivera*, 84 Conn. App. 245, 250, 853 A.2d 554 (sexual assault in second degree not lesser offense included within crime of risk of injury to child).

The defendant insists that *Ellison* was wrongly decided and urges us to overturn it. We decline his invitation. In light of that precedent, the defendant can-

---

[11] Under *Golding*, "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) *State* v. *Golding*, supra, 213 Conn. 239–40. The first two questions relate to whether a defendant's claim is reviewable, and the last two relate to the substance of the actual review. *State* v. *Jordan*, 64 Conn. App. 143, 150, 781 A.2d 310 (2001).

not establish that the alleged constitutional violation clearly exists, as required by *Golding*. See *State* v. *Lucas*, 63 Conn. App. 263, 281, 775 A.2d 338 (defendant's claim fails third prong of *Golding* due to binding Supreme Court precedent), cert. denied, 256 Conn. 930, 776 A.2d 1148 (2001); *State* v. *Maia*, 48 Conn. App. 677, 685, 712 A.2d 956 (defendant's claim fails third prong of *Golding* due to binding Supreme Court, Appellate Court precedent), cert. denied, 245 Conn. 918, 717 A.2d 236 (1998). His double jeopardy claim, therefore, is unavailing.

The judgments are affirmed.

In this opinion the other judges concurred.